IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                           No. CR 10-2077 JP

JOAQUIN BASSOLS, and
ANTHONY JAMES AIELLO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Defendant Joaquin Bassols filed a Motion to Reconsider,[1] asking the Court to reopen the suppression hearing in this case. The United States filed a Response, arguing that Bassols' Motion to Reconsider should be denied. On January 19, 2012, the Court held a hearing on Bassols' Motion to Reconsider. Assistant United States Attorney Nicholas J. Ganjei and Assistant United States Attorney James R.W. Braun appeared on behalf of the Government. Attorney Daniel J. Tallon appeared on behalf of Bassols, who was also present. The Court has considered the parties' arguments and the relevant law, and the Court concludes that Bassols' Motion to Reconsider should be denied.

---

[1] On December 7, 2011, Defendant Bassols filed a MOTION TO RECONSIDER MEMORANDUM OPINION AND ORDER (Doc. 69) DENYING DEFENDANT BASSOLS' MOTION TO SUPPRESS ALL EVIDENCE (Doc. No. 157) (Motion for Reconsideration). On December 23, 2011, the Government filed the UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF MOTION TO SUPPRESS (Doc. No. 163) (Response). Defendant Bassols did not file a Reply. Defendant Anthony Aiello did not join in Defendant Bassols' Motion to Reconsider and did not participate in the hearing on the motion.

**BACKGROUND**

On February 28, 2011, Bassols filed a Motion to Suppress all evidence found as a result of a June 16, 2010, traffic stop initiated by Officer Hermilio Lucero.[2] Bassols argued that (1) Officer Lucero did not have reasonable suspicion to stop the car because Bassols did not commit a traffic violation, (2) Officer Lucero impermissibly extended the length of the traffic stop when he asked Bassols for consent to search the car after Officer Lucero already had finished issuing Bassols a traffic citation, and (3) Officer Lucero violated the Fourth Amendment by frisking Bassols for weapons after obtaining consent to search the car. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 69) (Suppression MOO) at 4-5.

In its Response, the Government argued that (1) Officer Lucero had reasonable suspicion that Bassols violated NMSA 1978, Section 66-7-317(A) (1978), which requires persons to drive "as nearly as practicable entirely within a single lane"; (2) the traffic stop was not impermissibly extended, either because the encounter had become consensual or because Officer Lucero had reasonable suspicion to extend the search; and (3) officer safety justified the frisk. *See* Suppression MOO at 5.

On March 14, 2011, the Court held an evidentiary hearing on Bassols' Motion to Suppress. At the evidentiary hearing, the Court heard the testimony of Officer Lucero and viewed a dashcam video of the encounter between Officer Lucero and Bassols.

---

[2] On February 28, 2011, Defendant Bassols filed DEFENDANT JOAQUIN BASSOLS'S MOTION TO SUPPRESS ALL EVIDENCE FOUND AS A RESULT OF THE JUNE 16, 2010, TRAFFIC STOP OF THE SILVER MERCURY DRIVEN BY BASSOLS (Doc. No. 38) (Motion to Suppress). On March 11, 2011, the Government filed the UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS (Doc. No. 44). On March 14, 2011, Defendant Bassols filed REPLY BRIEF IN SUPPORT OF JOAUIN [sic] BASSOLS'S MOTION TO SUPPRESS (Doc. No. 46).

Based on the dashcam video and the testimony of Officer Lucero, the Court made the following factual findings. *See* Suppression MOO at 2-4. On June 16, 2010, Officer Hermilio Lucero was patrolling a section of Interstate 40 between exit 81 and exit 89. In that area, Interstate 40 is a divided highway with two lanes of travel in each direction—an inner or left lane that is adjacent to the median and an outer or right lane that is adjacent to the shoulder. While Officer Lucero was traveling eastbound in the left lane, he observed a silver Mercury vehicle ahead of him traveling eastbound in the right lane. Officer Lucero noticed the Mercury veer toward the outer edge of the right lane, almost striking the solid stripe dividing the right lane from the shoulder, and then veer back to the left toward and very close to the dashed line dividing the left and right lanes. Officer Lucero then saw the Mercury veer back to the right and drive for a few seconds onto and on the solid stripe dividing the right lane from the shoulder. While Officer Lucero was certain that the tires of the Mercury went onto the solid stripe, he was unsure of whether the tires crossed over the stripe onto the shoulder because while he could see the vehicle go onto the stripe, he could not see how far across the stripe it went. Because of Officer Lucero's position slightly behind and to the side of the Mercury, the dashcam video does not conclusively show whether the Mercury drove on the shoulder by crossing the solid stripe that divided the lane from the shoulder. Based on his training, Officer Lucero believed he had observed a violation of Section 66-7-317. Because of this perceived violation, Officer Lucero turned on his emergency equipment and stopped the Mercury.

After stopping the Mercury, Officer Lucero asked the driver, who was identified as Bassols, to step out of the Mercury. Officer Lucero then engaged Bassols in general conversation about Bassols' travel plans while Officer Lucero filled out a warning citation for violating Section 66-7-317. Officer Lucero discovered that Bassols and a friend, his passenger, had flown

from Miami, FL, where they both lived, to Phoenix, AZ, where Bassols rented the vehicle. At the time of the stop, Bassols said he and his passenger were traveling to Memphis, TN, to visit a friend who had recently been in an accident.

After completing the warning citation, Officer Lucero returned Bassols' driver's license and other documentation to Bassols. Officer Lucero then gave Bassols the citation and advised Bassols to have a good day and to be careful. Bassols turned around and began walking back toward his vehicle. As Bassols was walking away, Officer Lucero called out to Bassols, who turned around and started walking toward Officer Lucero. When Bassols turned around, Officer Lucero asked "can I ask you a few more questions." Officer Lucero asked if there was anything illegal in the Mercury and whether Bassols would be willing to let Officer Lucero search the Mercury. Bassols replied that there was nothing illegal in the vehicle and agreed to let Officer Lucero conduct a search of the vehicle. After Bassols read and signed a consent to search form, for safety reasons Officer Lucero conducted a pat-down search of Bassols for weapons. Officer Lucero directed Bassols to move to the side of the highway right-of-way, far away from the vehicle. Officer Lucero did not have any specific information that Bassols might have been armed or dangerous at the time that he conducted the pat down. Next, Officer Lucero obtained consent to search the vehicle from the passenger and also did a brief pat down of the passenger. After briefly looking in the trunk and the passenger compartment of the Mercury, Officer Lucero deployed his canine to sniff the exterior of the vehicle. The dog alerted to the right front bumper where Officer Lucero ultimately located twenty-seven bundles of marijuana and one bundle of methamphetamine.

On March 29, 2011, the Court denied Defendant Bassols' Motion to Suppress. Suppression MOO at 19-20. The Court concluded that (1) Officer Lucero had reasonable

suspicion that Bassols violated Section 66-7-317, *id.* at 6-15; (2) the length of the traffic stop was not impermissibly extended because the stop had become a consensual encounter, *id.* at 16-18; and (3) the frisk was justified by officer safety, *id.* at 18-19. In denying Bassols' Motion to Suppress, the Court concluded as a matter of law "that a driver who drives *on* the line or stripe . . . that separates a lane from the shoulder" has violated Section 66-7-317(A) by failing "to drive 'as nearly as practicable within a single lane.'" *Id.* at 1.

## DISCUSSION

Bassols argues that the Court should reopen the suppression hearing and reconsider its decision to deny Bassols' Motion to Suppress because Officer Lucero's testimony at the suppression hearing was not credible. Motion to Reconsider at 1. To support his contention that Officer Lucero's testimony was not credible, Bassols asserts that Officer Lucero misrepresented the reason for initiating a traffic stop in another case, *United States v. Sheridan*, No. CR 10-333-JEC. According to Bassols, on January 16, 2010, five months prior to the traffic stop and arrest of Bassols, Officer Lucero stopped John Sheridan, who was driving a vehicle near Exit 117 on Interstate 40. Motion to Reconsider at 2-4. Although Officer Lucero advised Mr. Sheridan that he had been stopped for a "welfare check," Bassols argues that information from the Drug Enforcement Administration or another law enforcement agency motivated Officer Lucero to conduct what is know as a "whisper stop" of Mr. Sheridan. *Id.* at 3; *see also Sheridan*, No. CR 10-333-JEC, Doc. No. 34. Mr. Sheridan, through his attorney Robert Gorence, filed a motion to suppress evidence, arguing that "there was no reasonable suspicion to stop Mr. Sheridan's car" and that the "welfare check, as averred to in the criminal complaint of Mr. Sheridan is perjuriously false." *Sheridan*, No. CR 10-333-JEC, Doc. No. 26. However, a suppression hearing was never held in Mr. Sheridan's case, and on June 29, 2010, the case was dismissed without

prejudice. *See Sheridan*, No. CR 10-333-JEC, Doc. No. 54.

Based on the facts of the *Sheridan* case, Bassols argues that the Court should reopen the suppression hearing because the Government has not provided Bassols' defense counsel with discovery related to Officer Lucero's credibility. Motion to Reconsider at 6-7. The Government argues that there is no support for Bassols' belief that a negative credibility finding regarding Officer Lucero was made in the *Sheridan* case. Response at 1. In the Government's view, Bassols' Motion to Reconsider is supported only by "speculative whimsey" and should be denied. *Id.*

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure address motions to reconsider. But "courts in the Tenth Circuit have countenanced [motions to reconsider] under the common law doctrine and considerations of judicial economy recognized in *United States v. Healy*, 376 U.S. 75, 84 S. Ct. 553, 11 L. Ed. 2d 527 (1964)." *United States v. Sims*, 252 F. Supp. 2d 1255, 1260 (D.N.M. 2003). "In general, there are three grounds for granting a motion to reconsider: 1) if a manifest error of law or fact has been committed by the court; 2) if new evidence has been discovered; and 3) if there has been an intervening change in controlling law." *Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1114, 1116 (D.N.M. 2006).

Courts may construe a motion to reconsider as a motion seeking relief from an order under Rule 60(b). *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). "Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990). Under Rule 60(b), a "court may relieve a party" from an order for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

>(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>(4) the judgment is void;
>(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>(6) any other reason that justifies relief.

The Tenth Circuit applies an abuse of discretion standard when reviewing a district court's ruling on a motion to reopen a suppression hearing or a motion to reconsider an order denying a motion to suppress. *United States v. Wiseman*, 172 F.3d 1196, 1207-08 (10th Cir.1999) (noting that although the district court was under no obligation to reopen the suppression hearing, there may a "rare case in which extraordinary circumstances" give rise to "such grave doubt about the fairness of the proceedings" that failure to reconsider or to reopen the suppression hearing would be an abuse of discretion).

In this case, the Court's denial of Bassols' Motion to Suppress turned on the Court's factual finding that Bassols' car touched the line dividing the lane from the shoulder and the Court's legal conclusion that a driver who drives *on* the line has violated Section 66-7-317(A) by failing to drive "as nearly as practicable within a single lane." Suppression MOO at 1-2. The Court's factual finding that Bassols' car touched the line was based primarily on the Court's own viewing of the dashcam video. *Id.* at 2. When Officer Lucero testified that Bassols' car had touched the line, the Court found Officer Lucero's testimony to be credible because the testimony was confirmed by the video. *See id.* at 2-3. The Court's legal conclusion that driving on the line constitutes a violation of Section 66-7-317(A) resulted from the Court's *Erie*-guess as to how the New Mexico Supreme Court would rule on that issue. *See id.* at 7-14.

In his Motion to Reconsider, Bassols does not argue that his car did not touch the line

7

that divided the lane from the shoulder, or that the Court's legal interpretation of Section 66-7-317(A) was erroneous. Instead, Bassols argues that the Court should reopen the suppression hearing because Officer Lucero's true motivation for stopping Bassols was Officer Lucero's suspicion, based on a tip from another law enforcement agency, that Bassols was engaged in drug trafficking.

Regardless of Officer Lucero's subjective motivation for stopping Bassols, the Court concludes that the traffic stop did not violate the Fourth Amendment because the traffic stop was objectively justified by Officer Lucero's observation of Bassols' violation of Section 66-7-317(A). A traffic stop is reasonable under the Fourth Amendment "if (1) the officer's action was justified at its inception, and (2) the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004). The first prong of this test requires the Court to determine if the stop was objectively justified. *See id.* A traffic stop is valid if an officer "had reasonable suspicion that th[e] particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)). As long as an officer had reasonable suspicion, the "actual motivations or subjective beliefs and intentions of the officer are irrelevant." *DeGasso*, 369 F.3d at 1143.

In this case, the dashcam video viewed by the Court confirmed that Bassols violated Section 66-7-317(A), as interpreted by the Court. Therefore, Officer Lucero was objectively justified in stopping Bassols, and Officer Lucero's actual motivation for the stop is irrelevant under the Fourth Amendment. Reopening the suppression hearing to allow defense counsel to investigate Officer Lucero's credibility or subjective motivations for the traffic stop will not

change the Court's decision to deny Bassols' Motion to Suppress. No exceptional circumstances persuade the Court to reopen the suppression hearing or reconsider the order denying Bassols' Motion to Suppress. Accordingly, Bassols' Motion to Reconsider will be denied.

**IT IS ORDERED THAT** Defendant Joaquin Bassols' MOTION TO RECONSIDER MEMORANDUM OPINION AND ORDER DENYING DEFENDANT BASSOLS' MOTION TO SUPPRESS ALL EVIDENCE (Doc. No. 157) is DENIED.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE